# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

AIR-CON, INC.,

Plaintiff,

v.

CIVIL NO. 18-1800 (GAG)

DAIKIN APPLIED LATIN AMERICA, LLC,

Defendant.

## OPINION AND ORDER

Air-Con, Inc. ("Plaintiff" or "Air-Con") filed suit in state court against Daikin Applied Latin America, LLC ("Defendant" or "Daikin Applied"). Plaintiff, as the exclusive distributor of Daikin products in Puerto Rico, seeks redress for damages resulting from the alleged material impairment and breach of its distribution rights protected under the Puerto Rico Dealers' Act, ("Law 75"), P.R. LAWS ANN. tit. 10, §§ 278 et seq. (Docket No. 15-1).

On October 24, 2018 Defendant removed this case to this Court under diversity jurisdiction (Docket No. 1). Pending before the Court is Defendant's Motion to Compel Arbitration, pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 2, 4 ("FAA"), given that the distribution contract contains an arbitration clause applicable to Air-Con's claims. (Docket No. 10).

After reviewing the applicable law and the parties' submissions the Court hereby **GRANTS** Defendant's Motion to Compel Arbitration at Docket No. 10.

I. **Relevant Factual & Procedural Background**

Plaintiff Air-Con, is a corporation duly organized pursuant to the laws of the Commonwealth of Puerto Rico. Air-Con is engaged in the sale and distribution of air conditioners in Puerto Rico and

**Civil No. 18-1800 (GAG)**

the Caribbean, with its principal offices located in Toa Baja, P.R. (Docket No. 15-10, ¶ 1). Defendant Daikin Applied is a limited liability company with its principal offices located in Miami, FL. Id. ¶ 2.

On July 26, 2018, Air-Con filed suit in state court against Daikin Applied, Daikin North America, LLC, Technical Distributor, Inc, and company ABC, citing violations to the commercial relationship with Air-Con. (Docket No. 10 at 4). Air-Con voluntarily dismissed with prejudice all their claims against, Daikin North America, LLC, Technical Distributor, Inc, and company ABC on September 21, 2018. Id. Air-Con additionally dismissed its claim against Daikin Applied for exclusive distribution rights of select Daikin products in Puerto Rico under the Puerto Rico Dealers' Act ("Law 75"). Id.

On October 12, 2018, Air-Con filed the Amended Complaint against Daikin Applied in Commonwealth court for alleged noncompliance of the non-exclusive distribution agreement under Law 75. Id. at 1, 4. Air-Con claims that Daikin Applied impaired its non-exclusive distribution rights as to select Daikin brand air conditioning and related products within Puerto Rico and other Caribbean Islands. Id. at 1. Daikin Applied removed the action to this Court on the basis of diversity jurisdiction, on October 24, 2018. Id. at 4.

Daikin Applied moves to dismiss this action and to compel arbitration, arguing that Air-Con's claims are subject to arbitration pursuant to their written distribution agreement. Id. at 3, 6. Namely, Daikin Applied cites the FAA, which affirms that arbitration is mandatory when the parties have a valid arbitration agreement. Id. at 4. Daikin Applied, in the alternative, maintains that Air-Con agreed to arbitrate all claims before the Court pursuant to an arbitration clause included in the Daikin Sales Contract, which relates to the purchase and sale transactions of equipment and parts. Id. at 8.

**Civil No. 18-1800 (GAG)**

Air-Con opposes, arguing it is not bound by the Written Agreement because such agreement was never signed by Daikin Applied. (Docket No. 20 at 3-4). Furthermore, Air-Con posits that the Written Agreement expired on December 31, 2003. Id. Air-Con also states that the Daikin Sales Contract is simply an invoice, applicable to the purchase and sale of the equipment, and thus, the terms and conditions relevant to a distribution agreement are absent. Id. at 5. Daikin Applied counters that the fact that the agreement was not signed by Daikin Applied does not render it invalid. (Docket No. 25 at 3). Additionally, Daikin Applied argues that under Law 75, any termination clause in a distribution agreement is rendered null and void, and as such, the agreement continues to be binding. Id. at 3.

## II. Discussion

Air-Con alleges that the Written Agreement is not enforceable as Daikin Applied never executed it. (Docket No. 20 at 3). Air-Con claims the cited agreement was a final draft, which was to be signed by Daikin Applied, and thus as Daikin Applied failed to proffer evidence they signed it, the Written Agreement is not valid. Id.[1]

Under Puerto Rico law, "contracts shall be binding, whatever may be the form in which they may have been executed, provided the essential conditions required for their validity exist." P.R. LAWS ANN. Tit. 31, § 3451. The essential conditions for a contract in Puerto Rico are "consent, a definitive (and legal) object, and consideration." Citibank Glob. Markets, Inc. v. Rodriguez Santana, 573 F.3d 17, 24 (1st Cir. 2009) (see also P.R. LAWS ANN. tit. 31, § 3391) (also Figueroa Betancourt v. Televicentro de Puerto Rico, No. DKD 2002-0371, (P.R. Cir. Nov. 30, 2006), determining, under

---

[1] Air-Con provides no case law to support its arguments.

3

**Civil No. 18-1800 (GAG)**

Puerto Rico law, that the absence of a party's signature in a contract does not have the effect of invalidating the contract).

   A. <u>The Agreement</u>

Daikin Applied's lack of a signature is not sufficient under Puerto Rico law to invalidate the contract. While Daikin Applied never submitted a signed agreement, both parties have operated pursuant to the terms and conditions of the Written Agreement since the year 2000. (Docket No. 25 at 2-3; 15-10 ¶ 6).[2] The Written Agreement established a distribution relationship between Air-Con and Daikin Applied for the sale and distribution of air conditioners and related equipment marketed under the Daikin brand for the territories of Puerto Rico and the Caribbean. (Docket No. 15, Exhibit 10 ¶ 6). Thus, consent, a definitive object, and consideration are all present in the Written Agreement, making it a valid contract under Puerto Rico law.

Nonetheless, Air-Con claims that the Written Agreement expired on December 31, 2003. (Docket No. 20 at 3-4). Daikin Applied argues that under Law 75 the contract has not expired. Daikin Applied reasons that the Written Agreement was extended on a year to year basis, rendering "any termination clause in a distribution agreement" null and void pursuant to case law. (Docket No. 25 at 3). Law 75 states that: "[n]otwithstanding the existence in a dealer's contract of a clause reserving to the parties the unilateral right to terminate the existing relationship, no principal or grantor may directly or indirectly perform any act detrimental to the established relationship *or refuse to renew said contract on its normal expiration, except for just cause.*" P.R. LAWS ANN tit. 10, § 278a (emphasis added). Air-Con makes this argument in passing, presumably because it holds no legal weight. It is uncontested that Air-Con and Daikin Applied operated under the guidelines of

---

[2] Air-Con's Principal signed the Written Agreement submitted to the Court and initialed every page in the same. (Docket No. 15, Exhibit 7 at 35).

4

**Civil No. 18-1800 (GAG)**

the Written Agreement from December 31, 2003, until the present lawsuit. (Docket No. 15-10 ¶ 6-7). In fact, in the complaint Air-Con alleges that "according to the distribution relationship established, since the year 2000 until approximately the year 2013-2014, Air-Con had been the sole distributor of the Daikin products in Puerto Rico." Id. Air-Con and Daikin Applied kept renewing their relationship pursuant to the terms agreed upon on the Written Agreement. Thus, pursuant to case law, the contract was valid and remained valid after.[3] Now that the Court has determined that there was a valid contract binding upon the parties, it must determine whether the same contained a valid arbitration agreement.

### A. The Arbitration Clause

The FAA allows parties to resolve disputes before an arbitrator economically and efficiently. Colon Vazquez v. El San Juan Hotel & Casino, 483 F. Supp. 2d 147, 151 (citing Southland Corp. v. Keating, 465 U.S. 1, 7 (1984)). The FAA "articulates the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts." Id. Section two of the FAA states that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. When a contract contains an arbitration clause, "there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" Eazy Electronics & Tech., LLC

---

[3] Air-Con alleges that it never conducted business with Daikin Industries. (Docket No. 20 at 4). Nonetheless, as it itself claims in the Complaint, "early in the year 2000, Air-Con established a distribution relationship with what is now Daikin Applied for the exclusive sale and distribution of air conditioners and related equipment marketed under the Daikin brand for the territories of Puerto Rico and the Caribbean." (Docket Number 15-10, ¶ 6). Thus, Air-Con's argument is unfounded.

**Civil No. 18-1800 (GAG)**

v. LG Electronics, Inc., 226 F. Supp. 3d 68, 73 (D.P.R. 2016) (Gelpí, J.) (citing AT&T Techs., Inc. v. Comm. Workers of Am., 475 U.S. 643, 650 (1986)). The FAA leaves no room for district court discretion, and "mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985). "So long as the parties are bound to arbitrate, and the district court has personal jurisdiction over them, the court is under an unflagging, nondiscretionary duty to grant a timely motion to compel arbitration" under the FAA. InterGen N.V. v. Grina, 344 F.3d 134, 142 (1st Cir. 2003); see also 9 U.S.C.A § 201. To obtain an order compelling arbitration, the party seeking the order must establish "that [1] a valid agreement to arbitrate exists, [2] the movant is entitled to invoke the arbitration clause, [3] the other party is bound by that clause, and that [4] the claim asserted comes within the clause's scope." InterGen N.V., 344 F.3d at 142.

In this case, whether a valid agreement to arbitrate exists is at issue. Daikin Applied posits that they entered into a Written Agreement with Daikin Applied, which was renewed on a year to year basis up to this date. (Docket No. 10 at 5, 7). The Written Agreement includes Section 32.2, which submits both parties to arbitration in Osaka, Japan:

> Any dispute, controversy or difference which may arise between the parties out of, in relation to or in connection with this Agreement or any breach shall, unless settled by mutual consultation in good faith, be finally settled by arbitration in Osaka, Japan, by a tribunal consisting of three (3) arbitrators applying, acting and conducting all proceeding in accordance with the then applicable Commercial Arbitration Rules of Japan Commercial Arbitration Association.

Id. at 3. The First Circuit has established that "[w]here the court is persuaded that 'the parties' *arbitration agreement* was validly formed and that it cover[s] the dispute in question and is legally enforceable, and that [it] is not otherwise subject to revocation 'upon such grounds exist at law or in equity for the revocation of any contract,'" then the Court must submit the matter before it to arbitration. Dialysis Access Ctr., LLC, 638 F.3d at 376 (quoting Granite Rock Co. v. Int'l Broth. of

**Civil No. 18-1800 (GAG)**

Teamsters, 561 U.S. 287, 300; 9 U.S.C. § 2) (emphasis in original). Since Air-Con manifested its acceptance of the Written Agreement and failed to show that said agreement is invalid, there is a binding agreement to arbitrate between the parties. Thus, the first factor to compel arbitration is met.

The second factor to consider is whether the movant is entitled to invoke the arbitration clause. InterGen N.V., 344 F.3d at 142. Here, the Written Agreement provides that "[a]ny dispute, controversy or difference . . . between the parties . . . be finally settled by arbitration." (Docket No. 10 at 7). Thus, Daikin Applied, as a party to the Written Agreement, is entitled to invoke the arbitration clause. Consequently, the second factor to compel arbitration is met.

The third factor addresses whether the opposing party is bound by the arbitration clause. InterGen N.V., 344 F.3d at 142. Arbitration is a matter of contract, therefore a party "cannot be required to submit to arbitration any dispute which he has not agreed so to submit." InterGen N.V., 344 F.3d at 142-43 (citing AT&T Techs., Inc., 475 U.S. at 648). The First Circuit has interpreted this to mean that courts must be wary of forcing arbitration in "situations in which the identity of the parties who have agreed to arbitrate is unclear." InterGen N.V., 344 F.3d at 143 (citing McCarthy v. Azure, 22 F.3d 351, 355 (1st Cir. 1994)). In the case at hand, there is no ambiguity regarding the identity of the agreement's signatories. While Daikin Applied did not provide the signed Written Agreement, such does not render the contract invalid. Additionally, it is uncontested that Air-Con is also a signatory to the agreement. Furthermore, both parties have operated under the Written Agreement's terms the duration of their business relationship. Therefore, Air-Con is bound by the arbitration clause in the Written Agreement.

Lastly, the fourth factor assesses whether a party's claim falls within the scope of the arbitration clause. The parties agree that the agreement's arbitration clause applies to "[a]ny dispute, controversy or difference which may arise between the parties out of, in relation to, or in connection with this Agreement." (Docket No. 10 at 7). Air-Con's Complaint alleges breach of obligations

**Civil No. 18-1800 (GAG)**

under the Written Agreement, including impairment of the distribution channels in Puerto Rico, discrimination prices against Air-Con, increases in prices and taxes, delays in delivery, and elimination of a product from its arranged available products. (Docket Nos. 10 at 7; 15-10 ¶ 12-15, 18-21, 22-26, 27-28, 29-33). Such claims clearly relate to a dispute, controversy or difference arising between the parties in connection with the Written Agreement regarding an alleged impairment of distribution rights in Puerto Rico. (Docket No. 15-10 ¶ 12-34). As such, Air-Con's claims fall within the scope of the Written Agreement's arbitration clause. Given the foregoing, pursuant to the law, all factors required to compel arbitration have been met.

### III. Conclusion

For the foregoing reasons, the Court **GRANTS** Defendants' Motion to Dismiss and Compel arbitration at Docket No. 10. Plaintiff's claims against Defendants are hereby dismissed as the claims must proceed to arbitration.

**SO ORDERED.**

In San Juan, Puerto Rico this 25th day of June, 2019.

*/s/ Gustavo A. Gelpí*
GUSTAVO A. GELPI
United States District Judge