IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| AIR-CON, INC.,<br><br>     **Plaintiff,**<br><br>       v.<br><br>DAIKIN APPLIED LATIN AMERICA, LLC,<br><br>     **Defendant.** | CIVIL NO. 18-1800 (RAM) |

<u>OPINION AND ORDER</u>

RAÚL M. ARIAS-MARXUACH, United States District Judge

    Pending before the Court is Defendant Daikin Applied Latin America, LLC's ("Daikin" or "Defendant") *Motion for Summary Judgment* ("*Motion*"). (Docket No. 83). For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's *Motion*. This case will proceed to trial on Daikin's counterclaim for collection of monies.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

    This removed[1] action arises under the Puerto Rico Dealer's Act, Law No. 75 of June 24, 1964, as amended, P.R. Laws Ann. tit. 10 §§ 278-278e ("Law 75"). The original complaint was filed by Plaintiff Air-Con, Inc., ("Air-Con" or "Plaintiff") on July 26, 2018, and was subsequently amended on August 15, 2018, and October

---

[1] On February 22, 2024, the Court granted Defendant, a limited liability company, seven days to amend its notice of removal, pursuant to 28 U.S.C. § 1653, in order to aver its sole member's state of incorporation and principal place of business. (Docket No. 122). Defendant complied, (Docket No. 123), and the Court is satisfied that it has subject matter jurisdiction over this case.

12, 2018. (Docket Nos. 15-1, 15-5 and 15-10). Air-Con is a Puerto Rico corporation that has been engaged in the distribution of Daikin-branded air conditioners and related equipment in Puerto Rico and other Caribbean locations since 2000. (Docket Nos. 83-1 at 1-2 and 95 at 2). At all times relevant hereto, Air-Con has acted as the dealer or distributor in the distribution relationship, and the entity now known as Daikin Applied Latin America, LLC, has acted as the principal. (Docket Nos. 83-1 at 2 and 95 at 2).

Air-Con's instant complaint alleges that Daikin has impaired the existing distribution relationship in violation of Law 75 by: (a) selling Daikin-brand products to other distributors, who often rebrand the products or sell them at prices lower than Air-Con's; (b) distributing Daikin-brand products directly instead of through Air-Con; (c) increasing product prices inordinately and without notice; (d) delaying deliveries of inventory and parts; (e) not communicating adequately about part requests and purchase orders; (f) failing to provide technical and warranty support; and (g) eliminating a line of products, referred to as "mini-splits," without advance notice, a transition plan, or timely price lists for the new products. (Docket No. 15-10 at 5-8).

Daikin filed the instant *Motion* on September 28, 2023. (Docket No. 83). Defendant argues that Law 75's statute of limitations was

triggered in 2013 for all but one of Plaintiff's claims and thus they are time barred. Id. at 1. Most of these claims were the object of a prior lawsuit filed on October 21, 2015, and voluntarily dismissed on January 29, 2018. (Docket Nos. 83-12 and 86-2). Defendant maintains that the remaining Law 75 claim, regarding the replacement of a product line, fails as a matter of law. (Docket No. 83 at 1-2). Defendant also posits that because Law 75 does not apply outside Puerto Rico, any of Air-Con's claims regarding sales outside Puerto Rico must be dismissed. Id. at 15. Finally, Defendant asks that this Court grant summary judgment on its two counterclaims, one for declaratory judgment and one for collection of monies. Id. at 2; (Docket No. 53 at 15-17).

Plaintiff filed its *Opposition to Daikin Applied's Motion for Summary Judgment* ("*Opposition*") on November 1, 2023. (Docket No. 96). Air-Con argues that the limitations period for its claims did not begin until January 29, 2016. Id. at 8. In the alternative, Air-Con argues that the limitations period was tolled by (a) Defendant's repeated acknowledgments of obligation; (b) the filing of Plaintiff's 2015 lawsuit; and (c) the application of the continuing violations doctrine. Id. at 9, 13, 15. Air-Con disputes Daikin's defense to the product-line discontinuation claim. Id. at 17-19. Further, it maintains that Law 75 applies to its distribution activities in Caribbean islands outside Puerto Rico.

Id. at 20. Plaintiff also argues that summary judgment should be denied for Defendant's counterclaims. Id. at 21-22.

On December 15, 2023, Defendant filed a *Reply in Further Support of Motion for Summary Judgment* ("*Reply*"). (Docket No. 107). Daikin reiterates its arguments that the limitations period for most of Plaintiff's claims began in 2013, that the product-line replacement was not an impairment under Law 75, that Law 75 does not apply outside Puerto Rico, and that Daikin's counterclaims should be granted on summary judgment. Id. at 4, 10, 12-13. As to Plaintiff's arguments that the limitations period was tolled, Defendant avers that it made no acknowledgments of obligation, that the continuing violations doctrine does not apply, and that Plaintiff's prior withdrawal of its 2015 lawsuit undid that action's tolling effect. Id. at 7, 9.

## II.  APPLICABLE LAW

### A. <u>Summary Judgment Standard</u>

Summary judgment is proper if the movant shows: (1) the absence of a genuine dispute as to any material fact and (2) entitlement to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). A genuine dispute exists "if the evidence about the fact is such that a reasonable jury could resolve the point in favor of" the nonmovant. Alicea v. Wilkie, 2020 WL 1547064, at *2 (D.P.R. 2020) (internal quotation marks and citation omitted). A fact is

material only if it can alter the outcome of the suit under the governing law. *See* DLJ Mortg. Cap., Inc. v. Vazquez Perez, 2021 WL 3668241, at *2 (D.P.R. 2021) (internal quotation marks and citation omitted).

"The nonmoving party may defeat a summary judgment motion by demonstrating, through submissions of evidentiary quality, that a trialworthy issue persists." Robinson v. Town of Marshfield, 950 F.3d 21, 24 (1st Cir. 2020) (internal quotation marks and citation omitted). Although the district court is to interpret the record in the light most favorable to the nonmoving party, "the nonmovant has a corresponding obligation to offer the court more than steamy rhetoric and bare conclusions." Lawton v. State Mut. Life Assur. Co. of Am., 101 F.3d 218, 222-23 (1st Cir. 1996). Especially when the salient issues are those that the nonmovant would have the burden of proving at trial, the nonmoving party must "produce specific facts, in suitable evidentiary form." Id. at 223 (citation omitted). "Failure to do so allows the summary judgment engine to operate at full throttle." Id.

Local Rule 56 also governs motions for summary judgment in this district. *See* L. CV. R. 56. Per this rule, a nonmovant must admit, deny or qualify the facts supporting the summary judgment motion by referencing each paragraph of the movant's statement of material facts. Id. Adequately supported facts shall be deemed

admitted unless controverted per the manner set forth in the local rule. *See* <u>Vogel v. Universal Ins. Co.</u>, 2021 WL 1125015, at *2 (D.P.R. 2021) (internal quotation marks and citation omitted).

### B. **Law No. 75 of June 24, 1964, as amended**

Article 2 of Law 75 provides that "no principal or grantor may directly or indirectly perform any act detrimental [*i.e.*, impairment] to the established relationship or refuse to renew said contract on its expiration except for just cause." P.R. Laws Ann. tit. 10 § 278a. The "established relationship" between the dealer and the principal is defined by the distribution agreement, and Law 75 "**only protects against detriments to contractually acquired rights**." <u>Vulcan Tools of P.R., Inc. v. Makita U.S.A., Inc.</u>, 23 F.3d 564, 569 (1st Cir. 1994) (emphasis added). Law 75 cannot come into play where "a dealer's contractually acquired rights have not been impaired in any way." <u>Id</u>. Thus, a claim for damages under Law 75 requires "two essential elements: that the contract existing between the parties was impaired or terminated without just cause and that there were resulting damages." <u>Draft-Line Corp. v. Hon Co.</u>, 781 F. Supp. 841, 844 (D.P.R. 1991).

Claims under Law 75 are subject to a three-year statute of limitations that begins to run "from the date of the definite termination of the dealer's contract, or of the performing of the detrimental acts." P.R. Laws Ann. tit. 10 § 278d. Law 75 does not

contain tolling rules, but the Puerto Rico Supreme Court has held
that the tolling of Law 75 claims is governed by Article 941 of
the Puerto Rico Commerce Code. Pacheco v. Nat'l W. Life Ins. Co.,
22 P.R. Offic. Trans. 49, 60 (P.R. 1988). Article 941 provides
that prescription "shall be interrupted by suit or any judicial
proceeding brought against the debtor, by the acknowledgment of
the obligations, or by the renewal of the instrument on which the
right of the creditor is based." P.R. Laws Ann. tit. 10 § 1903.
Additionally, Pacheco held that these are the only grounds for
tolling Law 75 claims. 22 P.R. Offic. Trans. 49 at 60.

### III. FINDINGS OF FACT[2]

To make findings of fact, the Court reviewed Defendant's
*Statement of Uncontested Material Facts* ("*SUMF*"), Plaintiff's
*Opposition to SUMF* and *Statement of Additional Uncontested
Material Facts* ("*SAUMF*"), Defendant's *Reply to Opposition to SUMF*
and *Opposition to SAUMF*, and these documents' exhibits. (Docket
Nos. 83-1, 95 and 107-1). The Court also reviewed the complaints
and amended complaints filed by Air-Con against Daikin on October
21, 2015; July 26, 2018; August 15, 2018; and October 12, 2018.
(Docket Nos. 15-1, 15-5, 15-10 and 83-12). After crediting only
statements of fact that are properly supported by the record,

---

[2] Later references to each finding of fact in this Opinion and Order are cited
as follows: (Fact ¶ __).

uncontroverted, and material to the resolution of the *Motion*, the Court makes the following findings of fact.

### A. General Corporate Information

1. Air-Con is a corporation organized under the laws of Puerto Rico. (Docket Nos. 83-1 ¶ 1 and 95 ¶ 1).

2. Air-Con is engaged in the sale and distribution of air conditioners in Puerto Rico and other Caribbean locations. (Docket Nos. 83-1 ¶ 1 and 95 ¶ 1).

3. Air-Con's sole owner is Jaime Maldonado ("Mr. Maldonado"). (Docket No. 83-2 at 17:8-18:10).

4. Daikin is a Florida limited liability company. (Docket Nos. 83-1 ¶ 2 and 95 ¶ 2).

5. Daikin's parent company is Daikin Industries Ltd. ("Daikin Industries"). (Docket Nos. 83 ¶ 5 and 95 ¶ 5).

6. Since 2000, Air-Con has distributed on a non-exclusive basis air conditioners and related equipment under the Daikin brand in Puerto Rico and other Caribbean locations. (Docket Nos. 83-1 ¶ 3 and 95 ¶ 3).

7. When Air-Con began distributing Daikin-brand air conditioners and related in equipment in 2000, Air-Con's distribution relationship was with the entity that is now Daikin. (Docket Nos. 83-1 ¶ 4 and 95 ¶ 4).

8.  Since around 2013, Air-Con's distribution relationship has
    been with Daikin (*i.e.*, Daikin Applied Latin America, LLC).
    (Docket Nos. 83-1 ¶ 7 and 95 ¶ 7).

9.  As of the time of its *Motion*, Daikin has not withdrawn from
    the Puerto Rico market. (Docket Nos. 83-1 ¶ 7; 95 ¶ 7; 96
    at 22 and 107 at 11).

**B. The 2015 Lawsuit**

10. On October 21, 2015, Air-Con sued Daikin and other
    codefendants ("*2015 Complaint*") in Puerto Rico
    commonwealth court. (Docket Nos. 83-1 ¶ 20 and 95 ¶ 20).

11. The *2015 Complaint* claimed that Daikin had violated Law 75
    by committing a variety of acts that impaired Air-Con's
    distribution relationship with Daikin. (Docket No. 83-12).

12. Specifically, the *2015 Complaint* alleged that:

    a. In **2013**, Daikin began to distribute products via third
       parties other than Air-Con, allowing those third
       parties to sell the products at sales prices lower
       than Air-Con's and allowing or facilitating the
       placement of Goodman-brand labels on the products
       prior to sale. Id. ¶¶ 11 n.3, 19-24, 27.

    b. In **2013**, Daikin began to distribute products directly,
       instead of through Air-Con, including by selling

        directly to the Mall of San Juan shopping center. <u>Id.</u> ¶¶ 11 n.3, 25-27, 30.

    c. As early as **2013**, Daikin increased the prices of the air conditioners and related equipment sold to Air-Con. <u>Id.</u> ¶ 28.

    d. As early as **2013 and 2014**, Daikin refused to fulfill, or delayed the fulfillment of, purchase orders and part requests. <u>Id.</u> ¶ 28.

    e. As early as **2014**, Daikin failed to respond to Air-Con regarding the delivery of requested parts. <u>Id.</u> ¶ 28.

    f. As early as **2013**, Daikin failed to provide technical support, training support, and warranty support. <u>Id.</u> ¶¶ 28-29.

13. The *2015 Complaint* asserted that once Air-Con began confronting these problems in the distribution relationship, it notified Daikin of the situation and "waited patiently for close to two (2) years to attempt to reach an agreement outside a litigious context." <u>Id.</u> ¶ 29.

14. On August 22, 2017, Air-Con requested voluntary dismissal, without prejudice, of the *2015 Complaint*. (Docket Nos. 83-1 ¶ 22; 86-1 and 95 ¶ 22).

15. On January 29, 2018, the commonwealth court granted Air-Con's motion to dismiss. (Docket Nos. 83-1 ¶ 23; 86-2 and 95 ¶ 23).

**C. Elimination of the Mini-Splits Product Line in 2017**

16. Air-Con alleges that Daikin announced plans to change the "mini-splits" without providing reasonable notification or a transition plan. (Docket No. 15-10 ¶ 29).

17. Plaintiff alleges that Daikin eliminated the mini-splits in 2017. Id. ¶¶ 31, 33.

18. Plaintiff further alleges that Daikin replaced the mini-splits with less efficient and more expensive units, and that Defendant delayed providing pricing for the new equipment. Id. ¶¶ 32-33.

**D. The 2018 Lawsuit**

19. Air-Con filed this lawsuit against Daikin on July 26, 2018 ("*2018 Complaint*"). (Docket No. 15-1).

20. Air-Con amended its *2018 Complaint* on August 15, 2018, ("*Amended Complaint*") and again on October 12, 2018 ("*Second Amended Complaint*"). (Docket Nos. 15-5 and 15-10).

21. The *2018 Complaint*, *Amended Complaint*, and *Second Amended Complaint* all allege that Defendant violated Law 75 by engaging in third-party distribution, direct distribution,

price       increases,       delivery       delays,       inadequate
communication, and lack of support. (Docket Nos. 15-1, 15-5 and 15-10).

22. In the *Second Amended Complaint*, Plaintiff alleges for the first time that Daikin violated Law 75 by the manner in which it changed, eliminated, and replaced a line of products referred to as the "mini-splits." (Docket Nos. 15-1, 15-5 and 15-10).

**E. The Deposition of Mr. Maldonado**

23. Air-Con's owner, Mr. Maldonado, was deposed in this lawsuit. (Docket No. 83-2).

24. Mr. Maldonado testified that Air-Con's claims in its *Second Amended Complaint* are the same type and "basically a continuation of those acts that were included in the first [2015] complaint." Id. at 52:4-13, 52:19-53:14.

25. Mr. Maldonado testified that the *2015 Complaint*, *2018 Complaint*, and *Second Amended Complaint* concern issues that commenced in 2013. Id. at 56:6-57:19.

26. Mr. Maldonado also testified that the following events began occurring as early as **2013**:

a. Increases in the prices charged to Air-Con. Id. at 45:8-18, 46:4-13.

  b. Delays in the fulfillment and delivery of orders and requests submitted by Air-Con. Id. at 48:11-49:1.

  c. Failure to provide adequate support, training, and warranties. Id. at 48:11-49:4.

27. Additionally, Mr. Maldonado admitted that there is no contract provision prohibiting Daikin from discontinuing a product line. Id. at 55:9-56:4.

**F. Correspondence from Mr. Maldonado**

28. Separately, in correspondence sent by Mr. Maldonado in **2013 or 2014**, Mr. Maldonado discussed the following alleged actions by Daikin:

  a. Distribution of Daikin products to third parties other than Air-Con. (Docket Nos. 83-2 at 61:15-65:18; 83-4 and 83-5).

  b. Increases in the prices charged to Air-Con. (Docket Nos. 83-2 at 61:15-65:18; 83-4 and 83-5).

  c. Delays in the fulfillment and delivery of orders and requests submitted by Air-Con. (Docket Nos. 83-2 at 58:5-65:18; 83-3; 83-4 and 83-5).

  d. Inadequate communication with Air-Con regarding the fulfillment or delivery of orders or requests. (Docket Nos. 83-2 at 63:8-65:18; 83-3; 83-4 and 83-5).

    e. Failure to provide adequate support, training, technical support, and warranties. (Docket Nos. 83-2 at 61:15-65:18; 83-4 and 83-5).

29. On **April 15, 2015,** Mr. Maldonado sent a letter to Daikin. (Docket No. 83-6).

30. In that letter, Mr. Maldonado disputed actions by Daikin that allegedly impaired Air-Con's business and infringed on Air-Con's legal rights. <u>Id.</u>

31. Among other issues, Mr. Maldonado mentioned Daikin's decision to "open the gates in terms of [Daikin's] distribution chain" and the installation of Daikin's equipment in the Mall of San Juan. <u>Id.</u>

32. On **April 28, 2015,** Daikin replied to Mr. Maldonado's April 15, 2015, letter. (Docket No. 83-7).

33. In its reply, Daikin stated that, "[w]ith respect to Puerto Rico in particular, we have and will continue to sell applied equipment and we reject your characterization that doing so infringes upon your legal rights." <u>Id.</u>

34. On **October 22, 2015,** Mr. Maldonado wrote a letter to a business contact named Satoshi Okada. (Docket No. 83-8).

35. In that letter, Mr. Maldonado noted that the "Air-Con relationship with Daikin Applied" had "changed

dramatically to the point of no relationship" since "March-April 2013." Id.

36. In the October 22, 2015, letter, Mr. Maldonado added that:

> **In the last two and half years**, we haven't had one meeting to promote a mutual cooperation, to the contrary stopping orders, delaying quotes or no quotes, increasing prices, selling in the territories assigned to Air-Con, including in Puerto Rico, questioning every single order or project, even attempting to take our long term employees.

Id. (emphasis added).

## G. Further Communications Between Air-Con and Daikin

37. On **January 29, 2016,** Daikin's General Manager for the Caribbean, Jose G. Rodriguez, sent a letter to Air-Con announcing changes to Daikin's procedures pertaining to Air-Con. (Docket No. 95-2 at 10).

38. The letter stated that the changes would affect procedures on processing orders, paying credit balances, submitting shipping instructions, and providing a payment plan. Id.

39. On **June 29, 2017,** Mr. Maldonado emailed Daikin to protest the price of a new model of air conditioning equipment. (Docket Nos. 95-2 at 11-12 and 101-2 at 2-3).

40. On the same day, Daikin sales engineer Ivette Sanchez ("Ms. Sanchez") replied. (Docket No. 101-2 at 1).

41. In that reply, Ms. Sanchez told Mr. Maldonado that "management" had approved a previous sales price for Air-Con and that Mr. Maldonado would soon receive a "corrected pro-forma." <u>Id</u>.

42. On **March 14, 2018,** Mr. Maldonado wrote to Daikin regarding Air-Con orders "backdated January 18, 2018," that had not been processed. (Docket No. 95-2 at 17-18).

43. That same day, Ms. Sanchez responded to Mr. Maldonado. <u>Id.</u> at 16-17.

44. In that email, Ms. Sanchez apologized for the "oversight" and said she hoped to "expedite future orders without delays." <u>Id.</u>

45. Later that day, Mr. Maldonado replied to Ms. Sanchez. <u>Id.</u> at 16.

46. In his reply, Mr. Maldonado thanked Ms. Sanchez for her response but stated that "it is an unjustifiable work," since "[w]e face our customers every day." <u>Id.</u> at 16.

47. Within the same day, Ms. Sanchez responded to Mr. Maldonado's reply. <u>Id.</u>

48. In that second response, sent March 14, 2018, Ms. Sanchez offered her "deepest apologies." <u>Id.</u>

49. In that same email, Ms. Sanchez stated that, "[r]ecently, I have been trained on other tasks that have caused delays in responses." Id.

50. Ms. Sanchez also noted that due to telephone maintenance, Daikin was "not getting all calls." Id.

51. On **February 7, 2020,** Mr. Maldonado wrote Daikin to report a visit by an individual claiming to be a representative of Daikin. (Docket No. 95-2 at 19).

52. According to Mr. Maldonado, the alleged Daikin representative told Mr. Maldonado that Daikin was going to sell products directly in Puerto Rico. Id.

### IV.   DISCUSSION

Daikin moves for summary judgment on all of Air-Con's current Law 75 claims. Daikin also seeks summary judgment on its counterclaims for declaratory judgment and collection of monies. As discussed below, the Court finds that all of Air-Con's Law 75 claims should be dismissed. Additionally, the Court finds that summary judgment should be denied as to Daikin's two counterclaims and that Daikin's counterclaim for declaratory judgment should be dismissed.

### A. **Most of the Alleged Impairments Began in 2013 or 2014**

Daikin argues that all but one of Air-Con's Law 75 claims are time barred. (Docket No. 83 at 1). As noted earlier, Law 75 claims

are subject to a three-year statute of limitations, which starts to run "from the date of . . . the performing of the detrimental acts." P.R. Laws Ann. tit. 10 § 278d. Air-Con began the current lawsuit when it filed its *2018 Complaint* on **July 26, 2018.** (Fact ¶ 19). It amended that complaint twice in 2018, adding a new claim regarding the elimination of the mini-splits product line in its *Second Amended Complaint*. (Fact ¶¶ 20-22). Thus, the Court must determine if the three-year limitations period for any of the impairments alleged in Air-Con's current complaint, the *Second Amended Complaint*, began more than three years prior to when the given impairment was first raised in 2018.

To begin, the Court reviews the uncontested facts in the record to determine, if possible, when the alleged impairments began. Based on Air-Con's *2015 Complaint*, the deposition testimony of Mr. Maldonado, and correspondence authored by Mr. Maldonado from 2013 to 2015, the Court finds that all the alleged impairments or detrimental acts, with the exception of the elimination of the mini-splits line, began in **2013 or 2014.**

### 1. Air-Con's 2018 suit is a continuation of its 2015 suit, which alleged that impairments began in 2013 and 2014

Air-Con's own statements show that most of the impairments alleged in Air-Con's current complaint were also alleged in its *2015 Complaint*. Air-Con's owner, Mr. Maldonado, testified that the

allegations in its current lawsuit are a "continuation" of the allegations in its *2015 Complaint*. (Fact ¶ 24).

The near-total overlap between the allegations in Air-Con's *2015 Complaint* and *Second Amended Complaint* is important because, as will be discussed, the record shows that the impairments alleged in the *2015 Complaint* began in **2013 or 2014**. For example, Mr. Maldonado testified that the acts alleged in the *2015 Complaint* **commenced in 2013**. (Fact ¶ 25). Thus, any impairments alleged in the *2015 Complaint* that are also included in the *Second Amended Complaint* are time barred, unless Air-Con can show that the statute of limitations was tolled.

## 2. All but one of the impairments alleged by Air-Con began more than three years before the 2018 lawsuit

The record shows that all the impairments alleged by Air-Con, with the exception of the elimination of the mini-splits line, began more than three years before the *2018 Complaint*. Below, the Court compares Air-Con's current allegations in its *Second Amended Complaint* with uncontested evidence from the record.

### i. *Third-party distribution*

Air-Con alleges that Daikin allows the sale of Daikin products to distributors other than Air-Con, who often swap the labels on the products with Goodman-brand labels, and who sell the products at sales prices that are often lower than Air-Con's. (Docket No.

15-10 ¶¶ 18-21). **However**, in its *2015 Complaint*, Air-Con alleged that Defendant began selling to third-party distributors in or around 2013. (Fact ¶ 12). Additionally, in correspondence sent in 2013 or 2014, Mr. Maldonado raised concerns about Daikin's sale of products to third parties other than Air-Con. (Fact ¶ 28).

  ii. *Direct distribution*

  Air-Con alleges that Defendant distributes Daikin products directly, instead of through Air-Con, at sales prices lower than Air-Con's. (Docket No. 15-10 ¶¶ 18-19). **However**, in its *2015 Complaint*, Air-Con alleged that Defendant began distributing directly in or around 2013. (Fact ¶ 12). Additionally, on April 15, 2015, Mr. Maldonado sent a letter to Daikin, in which he protested Defendant's expansion of Daikin's distribution chain in Puerto Rico and distribution of equipment directly to the Mall of San Juan. (Fact ¶¶ 29-31). Daikin replied on April 28, 2015, disputing Mr. Maldonado's claims and stating that Daikin would continue to sell products in Puerto Rico. (Fact ¶¶ 32-33). Finally, Mr. Maldonado wrote a letter on October 22, 2015, in which he complained that over the previous two and a half years, Daikin had been "selling in the territories assigned to Air-Con." (Fact ¶¶ 34, 36).

### iii. *Price increases*

Air-Con alleges that Daikin began a pattern of arbitrarily increasing the prices of Daikin products sold to Air-Con, often with short notice, inadequate explanation, and/or by a large percentage. (Docket No. 15-10 ¶¶ 22-26, 34(i), 34(iii)). **However**, in its *2015 Complaint*, Air-Con alleged that Defendant began raising prices as early as 2013. (Fact ¶ 12). Additionally, in his deposition, Mr. Maldonado testified that the price increases began occurring as early as 2013. (Fact ¶ 26). Further, in correspondence sent in 2013 or 2014, Mr. Maldonado raised concerns about price increases. (Fact ¶ 28). Finally, in an October 22, 2015, letter, Mr. Maldonado complained that Daikin had been increasing prices over the previous two and a half years. (Fact ¶¶ 34, 36).

### iv. *Delivery delays*

Air-Con alleges that Daikin delayed delivery to Air-Con of inventory and parts, as well as delayed and suspended the fulfillment and shipment of purchase orders. (Docket No. 15-10 ¶¶ 27-28, 34(ii), 34(iv)-(v)). **However**, in its *2015 Complaint*, Air-Con specifically alleged that Defendant engaged in delivery delays as early as 2013. (Fact ¶ 12). Additionally, in his deposition, Mr. Maldonado testified that delivery delays began happening as early as 2013. (Fact ¶ 26). Further, in correspondence sent in 2013 or 2014, Mr. Maldonado raised concerns about delays

in order fulfillment and delivery. (Fact ¶ 28). Finally, in an October 22, 2015, letter, Mr. Maldonado complained that over the previous two and a half years, Daikin had been questioning and stopping orders. (Fact ¶¶ 34, 36).

    v. *Inadequate communication*

Air-Con alleges that Daikin failed to respond or communicate adequately about requests for parts and other orders. (Docket No. 15-10 ¶¶ 28, 34(v)). **However**, in its *2015 Complaint*, Air-Con alleged that Defendant was communicating poorly as early as 2014. (Fact ¶ 12). Additionally, in correspondence sent in 2013 or 2014, Mr. Maldonado raised concerns about Defendant's inadequate communication regarding the fulfillment or delivery of orders and requests. (Fact ¶ 28). Finally, in an October 22, 2015, letter, Mr. Maldonado complained that over the last two and a half years, Daikin had failed to meet with Air-Con and failed to provide quotes. (Fact ¶¶ 34, 36).

    vi. *Lack of support*

Air-Con alleges that Daikin failed to provide technical support, training, and warranties. (Docket No. 15-10 ¶ 34(vi)). **However**, in its *2015 Complaint*, Air-Con alleged that it notified Daikin about this lack of support, among other alleged impairments, as early as 2013. (Fact ¶ 12). Additionally, Mr. Maldonado testified that Daikin failed to provide adequate support,

training, or warranties as early as 2013. (Fact ¶ 26). And in correspondence sent in 2013 or 2014, Mr. Maldonado raised concerns about the same. (Fact ¶ 28).

> vii. *Elimination of the mini-splits line*

Air-Con alleges that Daikin announced that it would be changing the "mini-splits," without providing reasonable notification or a transition plan. (Fact ¶ 16). Plaintiff alleges that Daikin eliminated the mini-splits, replaced them with less efficient and more expensive units, and delayed providing pricing for the new equipment. (Fact ¶¶ 17-18). Air-Con alleges that the elimination occurred in **2017**. (Fact ¶ 17). **However**, as will be discussed below, this alleged conduct does not constitute an impairment under Law 75.

## B. <u>The Statute of Limitations Bars All But One of the Alleged Impairments That Began in 2013 or 2014</u>

As explained, the record shows that the impairments alleged by Air-Con began more than three years before the *2018 Complaint*, except for the mini-splits elimination that occurred in 2017. It also shows that Air-Con knew of these impairments for more than three years before initiating the 2018 lawsuit. Nevertheless, before concluding that these impairments are time barred, the Court must consider whether the statute of limitations was tolled.

### 1. Daikin is not equitably estopped from asserting the statute of limitations

Air-Con asserts that the limitations period did not start until 2016 because from 2013 to 2015 Daikin "repeatedly informed Air-Con of its intention and plan to continue working under the same terms and conditions." (Docket Nos. 96 at 9 and 95 at 10-15). Air-Con does not cite any law to support this argument but appears to be contending that Daikin is equitably estopped from asserting the statute of limitations. (Docket No. 96 at 8).

Puerto Rico law has recognized instances in which a defendant may be estopped from raising the statute of limitations if it acted in bad faith to induce the plaintiff to sit on his rights. Velilla v. Pueblo Supermarkets, Inc., 11 P.R. Offic. Trans. 732, 736 (P.R. 1981); Torres Ramirez v. Bermudez Garcia, 898 F.2d 224, 229-30 (1st Cir. 1990). However, Article 941 of the Commerce Code, which provides the tolling rules for Law 75, does not mention equitable estoppel. P.R. Laws Ann. tit. 10 § 1903. Air-Con has not cited, and the Court is not aware of, any commonwealth case applying the doctrine of equitable estoppel to bar a statute-of-limitations defense against a Law 75 claim. One federal judge in this district has done so. See Matosantos Com. Corp. v. SCA Tissue N.A., 329 F. Supp. 2d 255, 258-59 (D.P.R. 2004). But this Court has found no other example.

What is more, for equitable estoppel to preclude a statute-of-limitations defense, the defendant must have lulled the plaintiff into sitting out the **entire limitations period**. *See* Matosantos, 329 F. Supp. 2d at 259 (D.P.R. 2004) ("A defendant waives its claim to the statute of limitations defense when it beguiles the plaintiff by making representations throughout the statutory period."); *see also* Deisenroth v. Numonics Corp., 997 F. Supp. 153, 157 (D. Mass. 1998) (rejecting estoppel argument where plaintiff's beguiling statements ended before the three-year limitations period expired).

In this case, as explained, Air-Con became aware of almost all the alleged impairments as early as 2013 or 2014, more than three years before filing its *2018 Complaint*. Assuming *arguendo* that the three-year period commenced at the beginning of 2013, Air-Con would have had until the end of 2015 to bring its Law 75 claims. Air-Con met this deadline by suing in October of 2015. (Fact ¶ 10). Thus, Daikin's statements did not ultimately induce Air-Con to let the limitations period lapse. The equitable estoppel doctrine does not apply.

Air-Con's current argument that it was "on a honeymoon" with Daikin from 2013 through 2015 is contradicted by the record. (Docket No. 96 at 9). For example, on April 28, 2015, Daikin wrote to Mr. Maldonado to state that "[Daikin] ha[s] and will continue

to sell applied equipment and **we reject your characterization that doing so infringes upon your legal rights.**" (Fact ¶¶ 32-33) (emphasis added). Later that year, one day after filing its *2015 Complaint*, Mr. Maldonado memorialized that "[i]n the last two and [a] half years," the relationship between Air-Con and Daikin had been poor or nonexistent. (Fact ¶ 34, 36). He added that the "relationship has changed dramatically to the point of **no relationship**" since "March-April 2013." (Fact ¶ 35). These statements rule out any inference that Daikin somehow induced Air-Con into letting the limitations period expire.

Given these foregoing considerations, the Court finds that Defendant is not estopped from asserting Law 75's statute of limitations as a defense against Air-Con's claims.

## 2. A jury could not reasonably conclude that Daikin made an acknowledgment of obligation

Air-Con argues in the alternative that the limitations period was tolled under the Commerce Code's provision that "[p]rescription shall be interrupted by . . . the acknowledgment of the obligations." P.R. Laws Ann. tit. 10 § 1903; (Docket No. 96 at 9). That statute also provides that "in case of the acknowledgement of the obligations," "[t]he period of prescription shall begin to be counted again." P.R. Laws Ann. tit. 10 § 1903. Air-Con cites several instances in which it alleges that Daikin

acknowledged its obligations to Air-Con. (Docket No. 96 at 9-12).
It argues that each acknowledgment restarted the limitations
period. Id.

Under Puerto Rico law, a purported acknowledgment must
satisfy stringent requirements to have a tolling effect. In Widow
of Carlo v. Toro, the Supreme Court of Puerto Rico held that
acknowledgments must be made voluntarily by the debtor or
authorized representative, through legal means, and within the
limitations period. 99 P.R.R. 196, 212 (P.R. 1970). And in Díaz de
Diana v. A.J.A.S. Ins. Co., the Puerto Rico Supreme Court ruled
that an acknowledgment must be unequivocal and clear. 10 P.R.
Offic. Trans. 602, 615 (P.R. 1980). Acts that only indirectly or
ambiguously recognize another's legal right are insufficient. Id.;
see also Rodriguez Narvaez v. Nazario, 895 F.2d 38, 44 (1st Cir.
1990) (citing Widow of Carlo and Díaz de Diana with approval).

While the legal provision at issue in Widow of Carlo and Díaz
de Diana was Article 1873 of Puerto Rico's Civil Code,[3] the Puerto
Rico Supreme Court would likely apply the same requirements to the
analogous Commerce Code provision on tolling by acknowledgement.
The tribunal has long said that the Commerce Code's tolling statute
is more restrictive than the Civil Code's. Pacheco v. Nat'l W.

---

[3] P.R. Laws Ann. tit. 31 § 5303 (1930).

Life Ins. Co., 22 P.R. Offic. Trans. 49, 57 (P.R. 1988); Rios-Velez v. Baraka Ltd., 148 F. Supp. 2d 124, 126 (D.P.R. 2001) (citation omitted). Moreover, courts have applied the acknowledgement requirements from Widow of Carlo and Díaz de Diana to tolling statutes other than Article 1873. *See, e.g.*, Bryan v. Wal-Mart P.R., Inc., 951 F. Supp. 2d 236, 240-41 (D.P.R. 2013) (applying Widow of Carlo and Díaz de Diana to a tort statute).

Here, the only relevant acknowledgements by Daikin are those that allegedly occurred within three years from the beginning of the detrimental acts in 2013 or 2014 **and** no more than three years prior to the *2018 Complaint*. Acknowledgements must occur within the original limitations period. Widow of Carlo, 99 P.R.R. at 212; *see also* Quality Cleaning Prods. R.C., Inc. v. SCA Tissue N.A., 794 F.3d 200, 203 (1st Cir. 2015) (explaining that Law 75 actions "accrue at the time of the breach" and declining to import the continuing violations doctrine into Law 75). Assuming *arguendo* that the alleged impairments began in 2014 (except for the elimination of the mini-splits in 2017), any acknowledgement after 2017 would have no tolling effect. And because an acknowledgement merely restarts the three-year clock, purported acknowledgements that happened before 2015 are also irrelevant.

i. *Purported acknowledgements within the relevant period*

Of the acknowledgments alleged by Air-Con that fall within the relevant time frame, **2015 to 2017,** the Court concludes that none could be reasonably interpreted by a jury as an acknowledgment by Daikin of a legal obligation to Air-Con.

On **January 29, 2016,** Daikin's General Manager for the Caribbean, Jose G. Rodriguez, sent a letter to Air-Con, announcing changes to Daikin's procedures pertaining to Air-Con. (Fact ¶¶ 37-38). After reviewing the letter, the Court finds that nothing in it could be reasonably interpreted as an acknowledgment of a legal obligation to Air-Con, much less an acknowledgment that is clear and unequivocal. The letter merely describes changes in policy. It does not discuss whether such changes are allowed or required by the terms of a distribution agreement.

On **June 29, 2017,** a Daikin employee named Ivette Sanchez emailed Mr. Maldonado to say that Daikin management had approved certain pricing for Air-Con and that a "corrected pro-forma" was forthcoming. (Fact ¶¶ 39-41). After examining this email exchange, the Court finds that it falls short of being a clear and unequivocal acknowledgment of legal obligation. The exchange may show that the parties negotiated pricing, but it cannot be reasonably interpreted as Daikin admitting that prior prices were a breach of a legal obligation. Additionally, as discussed below,

Air-Con fails to show that Ms. Sanchez had authority to make an acknowledgement on behalf of Daikin.

ii. *Purported acknowledgements that are untimely*

Although outside the three years from the performing of the detrimental acts, the Court in an abundance of caution addresses two other purported instances of acknowledgment.

On **March 14, 2018**, Ms. Sanchez emailed Mr. Maldonado in response to his complaint about Air-Con orders that were backdated to January 18, 2018, and had not been processed. (Fact ¶¶ 42-43). Ms. Sanchez apologized for the "oversight" and said she hoped to "expedite future orders without delays." (Fact ¶ 44). Later in the exchange, she offered "deepest apologies" and stated that "[r]ecently, I have been trained on other tasks that have caused delays in responses." (Fact ¶¶ 45-49). She also noted that Daikin was missing some telephone calls. (Fact ¶ 50).

The Court finds that a reasonable jury could not conclude that this email exchange constituted an acknowledgment of obligation by Daikin. Even assuming *arguendo* that Ms. Sanchez's emails were a timely, clear, and unequivocal recognition of an obligation to deliver orders on time, no reasonable jury could conclude that Ms. Sanchez had authority to make acknowledgments **on behalf of Daikin**. For an acknowledgment to be valid, it must have been "carried out by the debtor himself, with full capacity to

act, or through his legal representative or attorney, with sufficient power to perform it." Id. As the party alleging an acknowledgment, Air-Con must produce admissible facts that would allow a jury to conclude that Ms. Sanchez had authority to bind Daikin. *See* Lawton v. State Mut. Life Assur. Co. of Am., 101 F.3d 218, 222-23 (1st Cir. 1996). Air-Con fails to meet that burden.

Air-Con's argument for why Ms. Sanchez's March 14, 2018, emails constitute an acknowledgment is conclusory. After quoting the email exchange, Air-Con baldly asserts that Daikin therefore "acknowledged to be impairing the distribution relationship with Air-Con." (Docket No. 96 at 12). But that exchange alone cannot support a finding that Ms. Sanchez had authority to make acknowledgments on behalf of Daikin. (Fact ¶¶ 42-50). *See* RTR Techs., Inc. v. Helming, 707 F.3d 84, 93 (1st Cir. 2013) (requiring more than "speculation and surmise" to survive summary judgment). Nor is the Court aware of any evidence in the record that would support such a conclusion. Therefore, the Court holds that, in addition to being untimely, a reasonable jury could not find the March 14, 2018, email exchange to constitute an acknowledgment under Puerto Rico law.

Lastly, on **February 7, 2020**, Mr. Maldonado wrote Daikin to report that an individual claiming to represent Daikin had visited Mr. Maldonado and announced Defendant's plans to distribute

directly in Puerto Rico. (Fact ¶¶ 51-52). After reviewing the letter, the Court finds that, in addition to being untimely, the visit recounted in this letter could not be reasonably interpreted as Daikin acknowledging a legal obligation to refrain from selling directly.

### 3. The *2015 Complaint* did not toll the limitations period

Air-Con also argues that it tolled the statute of limitations for the impairments that began in 2013 or 2014 by filing its *2015 Complaint*. (Docket No. 96 at 13). Air-Con cites to Article 941 of Puerto Rico's Commerce Code, which provides that "[p]rescription shall be interrupted by suit or any judicial proceeding." Id.; P.R. Laws Ann. tit. 10 § 1903. However, Article 941 also provides that "[p]rescription shall be considered **uninterrupted by a judicial proceeding if the plaintiff should withdraw it.**" P.R. Laws Ann. tit. 10 § 1903. Here, Air-Con moved to withdraw its *2015 Complaint* in 2017, and the commonwealth court granted that motion in 2018. (Fact ¶¶ 14-15). Applying the plain meaning of Article 941, the Court finds that Air-Con's withdrawal of its 2015 lawsuit vitiated that lawsuit's tolling effect.

Air-Con argues that Article 941 should not apply because Air-Con moved to withdraw under Rule 39.1(b), not Rule 39.1(a). (Docket No. 96 at 13-14). However, Article 941 does not distinguish between withdrawals under Rule 39.1(b) and Rule 39.1(a). *See* P.R. Laws

Ann. tit. 10 § 1903. The statute is unambiguous. As such, the Court finds that Air-Con's 2015 lawsuit did not toll the statute of limitations.

### 4. The continuing violations doctrine does not apply

Finally, Air-Con contends that its claims are not time barred because of the continuing violations doctrine. That doctrine "allows a lawsuit to be delayed in cases -- such as hostile work environment claims -- in which a course of 'repeated conduct' is necessary before 'a series of wrongful acts blossoms into an injury.'" Quality Cleaning, 794 F.3d at 205 (internal citation omitted). Air-Con notes that no commonwealth court has addressed whether the continuing violations doctrine applies to Law 75 and requests that this Court certify that question to the Puerto Rico Supreme Court. (Docket No. 96 at 15-17).

As a general rule, a federal court that encounters an unanswered commonwealth-law question "should not simply throw up its hands but, rather, . . . endeavor to predict" the correct rule. Butler v. Balolia, 736 F.3d 609, 613 (1st Cir. 2013). Whether to certify such a question to the Puerto Rico Supreme Court "rests in the sound discretion" of the district court. Lehman Bros. v. Schein, 416 U.S. 386, 391 (1974). However, certification is usually best left for questions that are close, important, and undecided. In re P.R. Elec. Power Auth., 687 F.2d 501, 504 (1st Cir. 1982).

Here, the Court declines to certify Plaintiff's proposed question to the Puerto Rico Supreme Court due to dispositive First Circuit precedent. More than a decade ago, the First Circuit faced this very question and, like the Court today, lacked clear commonwealth-court precedents to guide it. Quality Cleaning, 794 F.3d at 206. In Quality Cleaning, the First Circuit predicted that the Puerto Rico Supreme Court would not apply the continuing violations doctrine to Law 75. Id. The appeals court reasoned that Law 75 violations are contractual in nature, and "**a contract breach is a single, readily ascertainable, event.**" Id. (emphasis added). This Court follows that holding.

Air-Con argues in the alternative that if the continuing violations doctrine does **not** apply, then the Puerto Rico Supreme Court should be asked whether each separate breach of a distribution agreement begins a new limitations period. (Docket No. 96 at 15-16). Air-Con does not develop this argument, which runs counter to Quality Cleaning's reasoning that "a contract breach is a single, readily ascertainable, event." 794 F.3d at 206. Accordingly, the Court declines to certify this question to the Puerto Rico Supreme Court. *See also* Basic Controlex Corp. v. Klockner Moeller Corp., 202 F.3d 450, 453 (1st Cir. 2000) (limitations period for Law 75 claim began to run as soon as plaintiff knew of defendant's plan to commit detrimental acts).

In summary, having considered the exceptions to the statute
of limitations raised by Air-Con, the Court finds that all the
alleged Law 75 impairments that began in 2013 or 2014 are time
barred. The Court therefore **DISMISSES WITH PREJUDICE** these time-
barred claims and moves next to consider the impairment that
allegedly occurred in 2017.

**C. <u>The 2017 Mini-Splits Elimination Was Not an Impairment</u>**

Daikin argues in its *Motion* that Air-Con's remaining claim,
regarding the elimination of the mini-splits, should be dismissed
because the conduct alleged does not constitute an impairment under
Law 75. (Docket No. 83 at 11-14).

"[T]o prove a violation of Law 75, a party must show
that . . . the principal refused to renew or impaired the terms of
the existing contract between the parties." <u>José Santiago, Inc. v.
Smithfield Packaged Meats Corp.</u>, 66 F.4th 329, 337-38 (1st Cir.
2023). "Thus, 'whether or not an impairment has taken place will
depend upon the specific terms of the distribution contract.'" <u>Id.</u>
at 337 (quoting <u>Medina & Medina Inc. v. Hormel Foods Corp.</u>, 840
F.3d 26, 41 (1st Cir. 2016)); *see also* <u>Vulcan Tools of P.R. v.
Makita U.S.A., Inc.</u>, 23 F.3d 564, 569 (1st Cir. 1994) ("The
question whether there has been a 'detriment' to the existing
relationship between supplier and dealer is just another way of

asking whether the terms of the contract existing between the parties have been impaired.").

In considering Daikin's *Motion* as to the elimination of the mini-splits, the Court notes that Daikin has not withdrawn from the Puerto Rico market. (Fact ¶ 9). Plaintiff explicitly recognizes this. (Docket No. 96 at 22). Instead, Air-Con argues that Daikin impaired the parties' distribution relationship through the way it changed, eliminated, and replaced the mini-splits product line. (Docket No. 96 at 17-19; Fact ¶¶ 16-18).

This claim fails as a matter of law because Air-Con has not identified any contractual term that prohibits Daikin's alleged conduct. Mr. Maldonado conceded at deposition that there is no contract provision that prohibited Daikin from discontinuing a product. (Fact ¶ 27). Similarly, Air-Con has not identified any contractual provision that required Daikin to provide advance notice of a discontinuation, to offer transition programming, to replace the product line with a line of equal value, or to quote new products within a certain time frame. Air-Con asserts that industry standards required Daikin to provide reasonable advance notice of a product-line elimination. (Docket Nos. 15-10 at 7 and 83-2 at 55:9-56:4). But even if Plaintiff is correct about what industry standards require, Air-Con provides no reason for why those standards are binding on Daikin. Because "Law 75's

protections do not extend beyond the scope of the parties'
contract," the Court **DISMISSES WITH PREJUDICE** Air-Con's claim
concerning the elimination of the mini-splits.[4] José Santiago, 66
F.4th at 337; s*ee also* Medina & Medina, 840 F.3d at 49 (finding no
Law 75 impairment where the plaintiff "proffered no evidence
proving that [the principal] obligated itself to sell" a newly
developed product to the distributor) (citation omitted).

## D. **Daikin's Counterclaims**

The Court turns next to consider Daikin's two counterclaims:
a claim for declaratory judgment under 28 U.S.C. § 2201 and a claim
for collection of monies. (Docket No. 53 at 15-18).

### 1. **Daikin's claim for declaratory relief is not ripe**

Defendant requests declaratory judgment that it has just
cause under Law 75 to terminate its distribution relationship with
Air-Con. (Docket No. 53 at 18). Defendant explains that "[i]f
Daikin Applied terminates the distribution relationship with Air-
Con . . . [it] faces the possibility of potential liability," but
that if "Daikin Applied does not terminate . . . it will remain
[the] hostage of an interminable and hostile dealership

---

[4] Because the Court finds that all of Plaintiff's Law 75 claims should be
dismissed for the reasons already discussed, the Court need not address whether
Law 75 applies to the distribution of Daikin products outside Puerto Rico. That
said, the Court is well aware that other tribunals have repeatedly held that
Law 75 does not have extraterritorial effect. *See, e.g.,* Goya de P.R., Inc. v.
Rowland Coffee, 206 F. Supp. 2d 211, 215 n.4 (D.P.R. 2002); Alina & A Tours,
Inc. v. Royal Caribbean Cruises, Ltd., 2006 WL 897975, at *1 (D.P.R. 2006).

relationship." Id. at 17-18. In other words, Daikin asks the Court to grant declaratory judgment before Daikin proceeds to terminate the distribution agreement.

For a court to issue a declaratory judgment, the claim must be ripe for adjudication. *See* Penobscot Nation v. Frey, 3 F.4th 484, 508 (1st Cir. 2021). Ripeness requires (1) that the **claim be fit for resolution** and (2) that **delaying judgment would cause hardship** to the claimant. Id. at 509 (citation omitted). A claim is unfit for judicial resolution if it "involves uncertain and contingent events that may not occur as anticipated or may not occur at all." Id. (quoting Barnstable v. O'Connor, 786 F.3d 130, 143 (1st Cir. 2015)). Similarly, the "hardship" inquiry concerns harm that is "direct and immediate," not "wholly contingent." McInnis-Misenor v. Me. Med. Ctr., 319 F.3d 63, 73 (1st Cir. 2003).

Daikin's request for declaratory judgment meets neither requirement because its claim is premised on events that have not yet come to pass. Daikin seeks declaratory judgment to **head off liability in the event it decides to terminate its distribution relationship and Air-Con reacts by suing**. (Docket No. 53 at 17-18). But neither has happened yet. Daikin does not purport to have decided whether to terminate the distribution relationship. (Docket Nos. 53; 83; 83-1; 107 and 107-1 at 20-21). At the same time, Air-Con has not stated how it would respond if Daikin did

terminate. As such, delaying judgment will not cause Daikin any direct or immediate harm. Daikin is free to exit its relationship with Air-Con, as Daikin itself acknowledges. (Docket No. 53 at 17-18). Until then, it is uncertain whether Air-Con would respond by filing a Law 75 claim.

In short, Defendant's counterclaim for declaratory judgment is not ripe because it is premised on contingent events and uncertain harm. Therefore, the Court **DISMISSES WITHOUT PREJUDICE** Defendant's claim for declaratory judgment. *See also* <u>Rivera v. Salomon Smith Barney Inc.</u>, 2002 WL 31106418, at *1-3 (S.D.N.Y. 2002) (dismissing employee's claim for declaratory judgment regarding applicability of arbitration clause since plaintiff had not yet sued employer for unlawful conduct and employer had not yet indicated it would invoke the clause).

### 2. Genuine issues of material fact remain as to Daikin's claim for collection of monies

"For a collection of monies claim under Puerto Rico law, '[p]laintiff need only prove that a valid debt exists, that it has not been paid, that the plaintiff is the creditor and the defendants his debtors.'" <u>Concilio Fuente de Agua Viva, Inc. v. Ortiz-Hernandez</u>, 2023 WL 1070612, at *5 (D.P.R. 2023) (quoting <u>Citibank, N.A. v. R2 Advert., Inc.</u>, 2013 WL 12234280, at *7 (D.P.R.

2013)). Implicit in a collection-of-monies claim is that repayment of the debt is due at the time of the claim.

The uncontested facts do not establish that Air-Con's balance on its account with Daikin is past due. Air-Con admits that "the outstanding balance is $60,951.61," but it also asserts that "Air-Con is current with Daikin Applied." (Docket No. 95 at 27). Indeed, it appears that Defendant's collection-of-monies claim is brought in anticipation of its declaratory judgment claim. (Docket No. 83 at 19) ("Once this Court determines that Daikin Applied has just cause to terminate the relationship, as of this date, Air-Con owes the sum of $166,749.86 . . . ."). Moreover, even if it were established that Air-Con is past due on payments to Daikin, the amount of that debt would still be in dispute. *Compare* (Docket No. 83-1 at 14) (Defendant asserting debt of $166,749.86), *with* (Docket No. 95 at 26-27) (Plaintiff asserting debt of $60,951.61).

Because there is a genuine dispute about whether Air-Con's payment is due to Daikin and, if so, how much Air-Con must pay, the Court **DENIES** Defendant's *Motion* as to its collection-of-monies claim.

### V.   CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendant's *Motion for Summary Judgment*, (Docket No. 83), as to Plaintiff's Law 75 claims and **DENIES** Defendant's *Motion* as to Defendant's

counterclaims. This case will proceed to trial on Daikin's
counterclaim for collection of monies.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 8th day of March 2024.

s/Raúl M. Arias-Marxuach
UNITED STATES DISTRICT JUDGE